UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

**CASE NO.: 9:20-cv-82084-GAYLES**

**MUSTAFA GENCOGLANOGLU**,

      Plaintiff,

v.

**GABRIO BADOLATI**, *et al*.,

      Defendants.

_____/

## ORDER DISMISSING AMENDED COMPLAINT

**THIS CAUSE** is before the Court on *pro se* Plaintiff Mustafa Gencoglanoglu's Amended Complaint under 42 U.S.C. § 1983. [ECF No. 24]. Plaintiff, a state prisoner, alleges that officers with the Town of Palm Beach ("Palm Beach") Police Department violated his constitutional rights in various ways following his arrest in 2018. This case was stayed pending the resolution of Plaintiff's state criminal case, [ECF No. 6], which concluded in March of 2025. Because Plaintiff is proceeding *in forma pauperis* ("IFP"), [ECF No. 4], the Amended Complaint must be screened under 28 U.S.C. § 1915(e)(2)(B). For the following reasons, the Amended Complaint is **DISMISSED WITHOUT PREJUDICE**.

### I.      BACKGROUND

#### A.  Factual Background

Plaintiff alleges that on August 27, 2018, he was stopped in his vehicle and arrested by Palm Beach Police Department officers. [ECF No. 24 ¶ 13]. He claims that he was then brought to an interrogation room by several officers, who repeatedly referred to him as a "fucking Muslim." *Id*. ¶ 15. Plaintiff alleges that in the interrogation room he was "stripped of his shoes by an officer stomping on his heels[,] which pulled one of his socks halfway off his foot." *Id*. ¶ 16. Plaintiff

alleges that he was then "painfully and awkwardly handcuffed" with his hands behind his back, with the handcuffs attached to a wall or the back of his chair. *Id*. ¶ 17. Plaintiff was "left that way for a while" until an officer uncuffed his hands and re-cuffed each of his wrists to the arms of the chair, "again extremely tightly." *Id*. ¶ 18. Plaintiff claims that Defendant Sergeant Waymire then took Plaintiff's socks, leaving him barefoot. *Id*. ¶¶ 20–21. Plaintiff alleges that he was left in the interrogation room barefoot and handcuffed to the chair for an hour and a half. *Id*. ¶ 21.

Plaintiff alleges that afterwards, two officers escorted him to a holding cell, again referring to him as a "fucking Muslim." *Id*. ¶¶ 22–23. Plaintiff claims that the holding cell was "unreasonably, extremely cold and the floor was visibly wet" with a "vile grotesque" residue. *Id*. ¶ 25. Plaintiff alleges that he complained about the freezing temperatures and about being barefoot and in shorts and a "thin summer shirt," but the officers ignored his complaints and refused his requests for something to warm himself. *Id*. ¶ 26. Plaintiff alleges that his co-defendant was not mistreated this way during his interrogation because the officers did not believe the co-defendant was Muslim. *Id*.

Plaintiff claims that he was kept in the freezing holding cell for three hours and developed hypothermia. *Id*. ¶¶ 27–28. He alleges that he then returned to the interview room and was interrogated a second time by Defendant Detective Badolati for three hours. *Id*. ¶ 29. Plaintiff claims he has videos of these two interrogations. *Id*. ¶ 30. According to Plaintiff, he was shaking and shivering during his second interrogation, and Detective Badolati and other Defendants did not return his socks and shoes until after the interrogation. *Id*. ¶¶ 29–30. Plaintiff claims that during this second interrogation, Detective Badolati "threatened" sexual assault, saying, "Do you have any idea what they do [to] people like [you] in jail?" *Id*. ¶ 30. Plaintiff claims that he then returned to the same holding cell, where he was given two mylar blankets to warm himself and something to eat and drink. *Id*. ¶ 31. Plaintiff alleges that this abuse has caused him to suffer from post-traumatic

stress disorder ("PTSD") and anxiety, along with harmful side effects from the medications he takes to treat these disorders. *Id*. ¶¶ 44–46.

Plaintiff alleges that two years later, on December 2, 2020, he lodged a formal complaint about his mistreatment with the Palm Beach Police Department. *Id*. ¶ 33. The complaint also mentioned that expensive items were taken from Plaintiff's suitcase following his arrest. *Id*. Plaintiff states that a week later, a representative of the police department, Defendant Lieutenant Alber, met with Plaintiff to discuss only the missing property, ignoring his complaints about the officers' abuse. *Id*. ¶¶ 34–35. Plaintiff claims that Lieutenant Alber informed him that his property was given to his "friend," but Plaintiff alleges that he never authorized this person to retrieve his property. *Id*. ¶ 36. Plaintiff claims that when he attempted to raise the issue of his mistreatment in the interrogation room and holding cell, Lieutenant Alber responded that his agency does not save holding cell video, a claim Plaintiff says is "highly doubtful" and "suggests signs of a cover-up." *Id*. ¶ 38. Plaintiff alleges that a month later, he followed up with Lieutenant Alber, who informed him that his complaint was deemed unfounded. *Id*. ¶ 39. According to Plaintiff, Lieutenant Alber's report deliberately omitted the names of the officers who mistreated him and falsely stated that the officers "treated Plaintiff with a high level of professionalism." *Id*. ¶ 40.

Liberally construed, Plaintiff's Amended Complaint raises six causes of action: (1) excessive force based on the painful handcuffing; (2) unconstitutional conditions of confinement based on the cold temperatures in the holding cell; (3) violation of equal protection based on the officers' alleged religious discrimination; (4) deprivation of property without due process based on the items taken from Plaintiff's suitcase; (5) a claim regarding Lieutenant Alber's failure to report the alleged constitutional violations in the holding cell and interrogation room; and (6) denial of access to the courts based on the alleged destruction of the holding cell footage. *Id*. ¶¶ 50–57. The Amended

Complaint names eleven Defendants:  nine Palm Beach police officers, the Town of Palm Beach, and its police department. *Id*. ¶¶ 2–12. Plaintiff seeks damages for relief. *Id*. ¶¶ 60–61.

### B.  Procedural History

Plaintiff filed his original Complaint in this action on November 13, 2020, raising the same claims he raises here along with claims against his public defenders and the Assistant State Attorney. [ECF No. 1]. The Court screened the Complaint under 28 U.S.C. § 1915(e) and found that his claims for injunctive and declaratory relief were barred by *Younger v. Harris*, 401 U.S. 37 (1971), because "[t]he allegations in the Complaint are intertwined with the facts in Plaintiff's pending criminal charges for kidnapping, aggravated battery, and other offenses,"[1] [ECF No. 6 at 5–6]. Therefore, the Court dismissed Plaintiff's claims for injunctive relief and stayed his claims for damages pending the resolution of his criminal case, instructing him to notify the Court once his criminal case resolved. *Id*. at 6–7.

On March 13, 2025, Plaintiff was sentenced to forty years in state prison following his conviction by a jury for kidnapping, aggravated assault, and theft. *See State v. Gencoglanoglu*, No. 18-CF-8324, Doc. 1015 (Fla. 15th Cir. Ct. Mar. 13, 2025). On March 26, 2025, Plaintiff filed a Motion to Reopen and a Motion for Leave to Amend. [ECF Nos. 21, 22]. The Court granted the Motion to Amend and instructed Plaintiff to file an Amended Complaint, but it denied the Motion to Reopen, explaining that this case would remain closed until Plaintiff filed an Amended Complaint. [ECF No. 23]. On April 15, 2025, Plaintiff filed his Amended Complaint. [ECF No. 24].

---

[1] The Court took judicial notice under Federal Rule of Evidence 201 of the record in Plaintiff's state criminal case in Palm Beach County, Case No. 18-CF-8324. [ECF No. 6 at 5]; *see also Boyd v. Georgia*, 512 F. App'x 915, 917 (11th Cir. 2013) (holding that federal courts may take judicial notice of online dockets in a plaintiff's state criminal case). The Court again takes judicial notice of that record here.

## II.      LEGAL STANDARD

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must show that he was deprived of a federal right by a person acting under color of state law. *See Griffin v. City of Opa Locka*, 261 F.3d 1295, 1303 (11th Cir. 2001). Under 28 U.S.C. § 1915(e)(2)(B), the Court shall dismiss a complaint if it determines the action is "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." *Id*. § 1915(e)(2)(B)(i)–(iii). A pleading fails to state a claim for relief when it does not contain sufficient "factual matter (taken as true)" to "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007); *see also Alba v. Montford*, 517 F.3d 1249, 1252 (11th Cir. 2008) ("The standards governing dismissals under Rule 12(b)(6) apply to § 1915(e)(2)(B)(ii)."). A complaint need not contain detailed factual allegations, but it must provide as grounds for relief something more than "labels and conclusions" and "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citations omitted). To survive dismissal, a complaint must "state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The Court holds *pro se* pleadings "to a less stringent standard than pleadings drafted by attorneys" and construes them liberally. *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998). Nevertheless, the Court does not have "license to serve as *de facto* counsel for a party, or to rewrite an otherwise deficient pleading in order to sustain an action." *GJR Invs., Inc. v. Cnty. of Escambia, Fla*., 132 F.3d 1359, 1369 (11th Cir. 1998) (citations omitted).

## III.     DISCUSSION

### A.  *Excessive Force*

Plaintiff includes his allegations regarding his painful handcuffing within his conditions-of-confinement claim; but liberally construed, these allegations raise a separate claim for excessive

force. "[O]nly the most exceptional circumstances will permit an excessive force claim on the basis of handcuffing alone." *Sebastian v. Ortiz*, 918 F.3d 1301, 1312. (11th Cir. 2019). "Painful handcuffing, without more, is not excessive force in cases where the resulting injuries are minimal." *Rodriguez v. Farrell*, 280 F.3d 1341, 1351 (11th Cir. 2002); *see also Huebner v. Bradshaw*, 935 F.3d 1183, 1191 (11th Cir. 2019) ("[W]e have repeatedly held that painful handcuffing alone doesn't constitute excessive force."). In *Sebastian*, the Eleventh Circuit found that the use of tight handcuffs on an arrestee constituted excessive force where the handcuffs "were left in place for more than five hours after [the plaintiff] arrived at the station, long after his first complaints"; the handcuffs "caused constriction of the blood circulation and nerve damage"; and the officers applied the handcuffs "in a manner purposely intended to cause pain and injury." 918 F.3d at 1305, 1309 (internal quotations omitted). Conversely, in *Rodriguez*, the Eleventh Circuit found no excessive force where an officer "grabbed plaintiff's arm, twisted it around plaintiff's back, jerking it up high to the shoulder and then handcuffed plaintiff as plaintiff fell to his knees screaming that [the officer] was hurting him." 280 F.3d at 1351. Although the officer's actions in *Rodriguez* aggravated the plaintiff's pre-existing injury and ultimately led to amputation of his forearm, the Eleventh Circuit found no constitutional violation because there was no evidence that the officer "knew that handcuffing plaintiff would seriously aggravate plaintiff's preexisting condition." *Id*. at 1352.

Here, Plaintiff's allegations about his handcuffing do not state a claim for excessive force. Plaintiff alleges that he was "painfully and awkwardly handcuffed" in the interrogation room with his hands behind his back and "left that way for a while" until an officer re-cuffed his wrists to the arms of his chair, "again extremely tightly." [ECF No. 24 ¶¶ 17–18]. But Plaintiff does not allege the duration of his handcuffing, that he suffered any injury, or that the officers handcuffed him "in a manner purposely intended to cause pain and injury." *Sebastian*, 918 F.3d at 1305. Thus, his

allegations do not show that this is one of the "exceptional circumstances" where handcuffing alone constitutes excessive force. *Id*. at 1312.

Moreover, even if Plaintiff's allegations did show a use of excessive force, his claim would still fail because Plaintiff does not specify "which of the defendants are responsible for which acts or omissions" that form the basis of this claim. *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1323 (11th Cir. 2015). "A claim under section 1983 "requires proof of an affirmative causal connection between the actions taken by *a particular person* under color of state law and the constitutional deprivation." *LaMarca v. Turner*, 995 F.2d 1526, 1538 (11th Cir. 1993) (emphasis added). Because Plaintiff never identifies who applied his handcuffs, he has not stated a claim for excessive force.

### B. *Conditions of Confinement*

The Amended Complaint asserts a claim for unconstitutional conditions of confinement based on the allegedly cold holding cell where Plaintiff was left barefoot without warm clothes for three hours. The Eighth Amendment's prohibition on conditions of confinement that amount to cruel and unusual punishment also applies to pretrial detainees through the Fourteenth Amendment's Due Process Clause. *See Wilson v. Blankenship*, 163 F.3d 1284, 1291 (11th Cir. 1998); *Hamm v. DeKalb Cnty.*, 774 F.2d 1567, 1573–74 (11th Cir. 1985). The standards governing conditions-of-confinement claims are the same under the Eighth and Fourteenth Amendments. *See Hamm*, 774 F.2d at 1574. To demonstrate an Eighth Amendment violation, a prisoner must satisfy both an objective and subjective inquiry regarding a prison official's conduct. *See Chandler v. Crosby*, 379 F.3d 1278, 1289 (11th Cir. 2004). First, under the objective prong, "[t]he challenged condition must be extreme" and must "pose an unreasonable risk of serious damage to [the prisoner's] future health or safety." *Id*. Second, under the subjective component, the prisoner must show that prison officials acted with "deliberate indifference" to the conditions at issue, meaning the officials had subjective

knowledge of a risk of serious harm and disregarded that risk through conduct that exceeded negligence. *See Farrow v. West*, 320 F.3d 1235, 1245 (11th Cir. 2003).

Plaintiff alleges that he was shivering and developed hypothermia when he was left barefoot and in summer clothes in a cold, wet holding cell for three hours. [ECF No. 24 ¶¶ 24–28]. He further attests that he later developed PTSD and anxiety and now suffers from the harmful side effects of the medication he takes to treat these conditions. *Id*. ¶¶ 44–46. These allegations do not show that Plaintiff's conditions of confinement were sufficiently "extreme" to satisfy the objective prong of an Eighth Amendment violation. In *Bennett v. Chitwood*, 519 F. App'x 569 (11th Cir. 2013), the Eleventh Circuit held that the plaintiff failed to satisfy the objective component of his Eighth Amendment claim where he alleged that he "was required to remain nude for a one-time period of approximately 10.5 hours" in a cell where he "felt uncomfortably cold," but he never reported any medical problems from the exposure. *Id*. at 574. The Eleventh Circuit reasoned that "[g]iven the limited duration of [the plaintiff's] exposure to cool temperatures and the modest severity of those temperatures (even accepting [the plaintiff's] 'estimate' that the temperature was 'in the 50's'), the conditions were not so extreme to reach the level of an Eighth Amendment violation." *Id*.

Here, unlike in *Bennett*, Plaintiff does allege that he developed hypothermia, but he does not allege that he required treatment for this condition. *See Smith v. Warden, Hardee Corr. Inst*., 597 F. App'x 1027, 1030–31 (11th Cir. 2015) (holding that the district court properly dismissed a prisoner's Eighth Amendment claim based on exposure to cold because, although the prisoner claimed he suffered from hypothermia, he "never alleged that he required medical treatment"). In addition, Plaintiff seems to allege that his PTSD and anxiety resulted from the collective mistreatment he endured at the police station and not just the three hours he spent in the cold holding cell. [ECF No. 24 ¶ 44]. Finally, three hours was a significantly shorter period of time than the 10.5 hours the plaintiff in *Bennett* endured; and here, Plaintiff was only barefoot, not nude. *See Bennett*,

519 F. App'x at 574; *see also Chandler*, 379 F.3d at 1295 ("[T]he Eighth Amendment is concerned with both the 'severity' and the 'duration' of the prisoner's exposure" (quoting *Dixon v. Godinez*, 114 F.3d 640, 643 (7th Cir. 1997))); *Cook v. Hammond*, No. 5:10-CV-471-OC-10TBS, 2011 WL 13295816, at *7 (M.D. Fla. Sept. 27, 2011) (concluding that an inmate was not subjected to cruel and unusual punishment where he was forced to remain outside "for between 45 minutes and a few hours in 14 degree weather without shoes, socks, jackets, or blankets").

Further, even if these conditions were sufficiently extreme, Plaintiff has not satisfied the subjective prong because, as with his excessive force claim, he does not specify who committed the alleged constitutional violations. In the "Legal Claims" section of his Amended Complaint, Plaintiff lists seven Defendants who were allegedly responsible for the unconstitutional conditions of confinement: (1) Detective Badolati, (2) Sergeant Waymire, (3) Officer Arden, (4) Officer Morea, (5) Lieutenant Wilkinson, (6) Captain Silvestri, and (7) Chief of Police Nicholas Castro. [ECF No. 24 ¶ 50]. But in his "Statement of Facts" section, Plaintiff never specifies which Defendant(s) escorted him to the holding cell, kept him in the cell, controlled the temperature in the cell, or ignored his complaints about the cold. In other words, Plaintiff has not identified the Defendants who acted with "deliberate indifference" to the conditions at issue. *Chandler*, 379 F.3d at 1289. Accordingly, Plaintiff has not stated a conditions-of-confinement claim.

## C. *Equal Protection*

Plaintiff alleges that officers discriminated against him by repeatedly calling him a "fucking Muslim" and making insulting remarks about his religion. He also alleges that his overall mistreatment in the holding cell and interrogation room evinces religious discrimination because his co-defendant, whom the officers did not believe was Muslim, received better treatment. To state a claim for discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment, "a prisoner must demonstrate that (1) he is similarly situated to other prisoners who received more

favorable treatment; and (2) the state engaged in invidious discrimination against him based on race, religion, national origin, or some other constitutionally protected basis." *Sweet v. Sec'y, Dep't of Corr.*, 467 F.3d 1311, 1318–19 (11th Cir. 2006). "Proof of discriminatory intent or purpose is required to show a violation of the Equal Protection Clause." *Smith v. Governor of Ala.*, 562 F. App'x 806, 814 (11th Cir. 2014).

Plaintiff has not stated an equal protection claim based on the officers' alleged religious slurs because "verbal abuse alone is insufficient to state a constitutional claim." *Hernandez v. Fla. Dep't of Corr.*, 281 F. App'x 862, 866 (11th Cir. 2008); *see also Munera v. Metro W. Det. Ctr.*, 351 F. Supp. 2d 1353, 1363 (S.D. Fla. 2004) (plaintiff alleged he was subjected "to profanity and ethnic slurs, however, such verbal abuse alone, while certainly inappropriate, unprofessional, and offensive if it were true, does not make a constitutional claim."). For this reason, Detective Badolati's alleged threats of sexual assault in jail do not rise to the level of a constitutional violation.

As for the alleged more favorable treatment Plaintiff's co-defendant received at the police station, Plaintiff offers no allegations showing that this disparate treatment was the product of intentional discrimination. Plaintiff speculates that his co-defendant was treated more favorably because the officers "thought [he] was Russian and not [ ] Muslim," but he offers no specific, non-conclusory allegations to support this claim. *See Asad v. Bush*, 170 F. App'x 668, 673 (11th Cir. 2006) (affirming dismissal of prisoner's equal protection claim where he "made only vague and conclusory allegations suggesting that similarly situated people were treated more favorably" (quotation omitted)); *Allen v. St. John*, 827 F. App'x 1002, 1006 (11th Cir. 2020) (the plaintiff's "conclusory allegation that [the defendant] forwarded his legal mail 'because [the plaintiff] is Black' does not state a plausible claim"). While Plaintiff alleges that the officers verbally taunted him about his religion, he fails to show any connection between these verbal taunts and the more favorable treatment his co-defendant allegedly received. In any event, this claim fails for the same reason

Plaintiff's first two claims fail: he does not name the officers who allegedly discriminated against him. Accordingly, Plaintiff has not stated an equal protection claim.

### D. *Deprivation of Property without Due Process*

Plaintiff alleges that he was deprived of his property without due process. This claim is based on the same allegations as the claim Plaintiff raised in Case No. 24-cv-80709-BB, which was dismissed. There, as here, Plaintiff alleged that Palm Beach Police Department officers took expensive personal items from his suitcase following his arrest and failed to return them. *Gencoglanoglu v. Badolati*, No. 24-cv-80709-BB, ECF No. 1 (S.D. Fla. June 4, 2024). Judge Bloom held that Plaintiff's claim was incognizable because "[a] claim under section 1983 for the deprivation of property without due process is unavailable if the state provides 'a meaningful post deprivation remedy for the loss' of property." *Id*., ECF No. 4 at 7 (quoting *Weaver v. Geiger*, 294 F. App'x 529, 532 (11th Cir. 2008)). "The Eleventh Circuit has held that such claims are unavailable in Florida because the State provides an adequate post-deprivation remedy for property losses caused by state employees." *Id*. (citing *Weaver*, 294 F. App'x at 532). Because Plaintiff's deprivation-of-property claim is identical to the claim he raised in Case No. 24-cv-80709-BB, it is subject to dismissal for the same reason.

### E. *Failure to Report Constitutional Violations*

Plaintiff's Amended Complaint raises a claim against Lieutenant Alber based on his alleged failure to report the constitutional violations in the holding cell and interrogation room. Plaintiff alleges that Lieutenant Alber violated his rights "[b]y witnessing the infliction of torture on the Plaintiff via [a] recording of [the] interrogation" and failing to report "these cruel and unusual acts[.]" [ECF No. 24 ¶ 54]. These allegations do not state a claim under § 1983 because "law enforcement officers have no affirmative constitutional duty to investigate an incident." *Avery v. Montgomery Cnty. Sheriff's Off.*, No. 2:24-CV-594-ECM-SMD, 2024 WL 5319218, at *2 (M.D.

Ala. Nov. 5, 2024) (citing *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) ("a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another")); *see also Royster v. Brown*, No. 3:07-CV-54-MCR-MD, 2007 WL 433089, at *3 (N.D. Fla. Feb. 5, 2007) ("To the extent plaintiff believes he has a fundamental right to the investigation and/or prosecution of another, he is wrong"); *Johnson v. Jefferson Cnty., Ala.*, No. 2:16-CV-01459-RDP, 2017 WL 3334875, at *6 (N.D. Ala. Aug. 4, 2017) ("[A]llegations of 'inadequate investigations' alone do not raise any constitutional right to relief."). Plaintiff claims that Lieutenant Alber's actions made him "complicit" in the alleged abuse, but § 1983 liability requires personal participation in the acts that violated the Constitution.[2] *See Hale v. Tallapoosa Cnty.*, 50 F.3d 1579, 1582 (11th Cir. 1995).

## F. *Denial of Access to the Courts*

Plaintiff alleges that his constitutional rights were violated when officers "intentionally didn't save the holding cell video" as part of "a cover-up." [ECF No. 24 ¶ 55]. Liberally construed, this allegation raises a claim for the denial of access to the courts. "Access to the courts is clearly a constitutional right, grounded in the First Amendment, the Article IV Privileges and Immunities Clause, the Fifth Amendment, and/or the Fourteenth Amendment." *Chappell v. Rich*, 340 F.3d 1279, 1282 (11th Cir. 2003). Thus, the intentional concealment of a crime or constitutional violation can violate a plaintiff's right of access to the courts. *See id.* at 1283 ("[I]nterference with the right of court access by state agents who intentionally conceal the true facts about a crime may be actionable as a deprivation of constitutional rights under 42 U.S.C. [§] 1983"); *Hadley v. Gutierrez*, 526 F.3d 1324, 1332 (11th Cir. 2008) ("Covering up the use of excessive force may hinder a criminal defendant's access to the courts to redress a constitutional violation, a right protected by several

---

[2] In addition, Plaintiff's allegations against Lieutenant Alber do not state a failure-to-intervene claim because an officer must be "in a position to intervene" at the time of the alleged incident to be held liable for failing to intervene. *Sebastian*, 918 F.3d at 1312 (quoting *Priester v. City of Riviera Beach, Fla.*, 208 F.3d 919, 924 (11th Cir. 2000)). Here, Lieutenant Alber's alleged conduct occurred two years after the incident.

constitutional provisions"). "To have standing to seek relief under this right, however, a plaintiff must show actual injury by 'demonstrating that a nonfrivolous legal claim has been frustrated or impeded.'" *Jackson v. State Bd. of Pardons & Paroles*, 331 F.3d 790, 797 (11th Cir. 2003) (alterations adopted) (quoting *Lewis v. Casey*, 518 U.S. 343, 353 (1996)).

Here, Plaintiff does not allege that any legal claim was frustrated or impeded by the alleged destruction of the holding cell footage, nor has he alleged that it hindered his defense in his criminal case. Thus, Plaintiff has not stated a claim for the denial of access to the courts.

### G. *Municipal Liability*

Finally, Plaintiff has not stated a claim for municipal liability against the Town of Palm Beach or its police department. As an initial matter, Plaintiff cannot sue the police department because "[s]heriff's departments and police departments are not usually considered legal entities subject to suit[.]" *Dean v. Barber*, 951 F.2d 1210, 1214 (11th Cir. 1992); *see also Wilk v. St. Lucie Cnty. Fla. Sheriff Off.*, 740 F. App'x 658, 662 (11th Cir. 2018) ("Under Florida law, sheriff's offices lack the legal capacity to be sued"). As for the claim against Palm Beach, Plaintiff has not stated a claim for municipal liability because he does not allege that Palm Beach had an official policy, custom, or practice that caused the alleged constitutional violations. *See Monell v. Dep't of Social Servs.*, 436 U.S. 658, 693–94 (1978) (to demonstrate municipal liability, the plaintiff must prove that the constitutional violations were caused by an official policy, custom, or practice).

## IV.   LEAVE TO AMEND

A *pro se* plaintiff generally must be granted at least one opportunity to amend his Complaint if an amended complaint might state a claim upon which relief can be granted. *See Silberman v. Miami Dade Transit*, 927 F.3d 1123, 1132 (11th Cir. 2019). Thus, Plaintiff shall be granted leave to file a Second Amended Complaint. Plaintiff's Second Amended Complaint must comply with the Federal Rules of Civil Procedure and the Local Rules of the Southern District of Florida. *See Moon*

*v. Newsome*, 863 F.2d 835, 837 (11th Cir. 1989). Rule 8 of the Federal Rules of Civil Procedure provides that a pleading which states a claim for relief must contain:

> (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support;
>
> (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and
>
> (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

Fed. R. Civ. P. 8(a).

While Rule 8 gives a plaintiff considerable leeway in framing a complaint, the Eleventh Circuit has tightened the application of Rule 8 with respect to § 1983 cases to identify meritless claims. *See GJR Invs.*, 132 F.3d at 1367 ("Some factual detail in the pleadings is necessary to the adjudication of § 1983 claims."). Accordingly, a § 1983 plaintiff must allege with specificity the facts which make out his claim. *See Wilson v. Strong,* 156 F.3d 1131, 1134 (11th Cir.1998). Factual detail in the pleadings is particularly necessary in cases involving qualified immunity, where the Court must determine whether a defendant's actions violated a clearly established right. *See GJR Invs.*, 132 F.3d at 1367.

In addition, Plaintiff must separate each cause of action against each Defendant into a different count. Pursuant to Fed. R. Civ. P. 10(b), the Second Amended Complaint must state its claims "in numbered paragraphs, each limited as far as practicable to a single set of circumstances." To promote clarity, "each claim founded on a separate transaction or occurrence . . . must be stated in a separate count[.]" Fed. R. Civ. P. 10(b). Plaintiff must clearly write the name of each Defendant who is a party to this action and specify which Defendant is responsible for each act or omission that forms the basis of his claims. *See Weiland*, 792 F.3d at 1323. Lastly, Plaintiff is cautioned that the Second Amended Complaint supersedes all prior complaints and should in no way refer to, or

incorporate by reference, facts alleged in any other pleading. *See Lowery v. Ala. Power Co.*, 483 F.3d 1184, 1219 (11th Cir. 2007); *see also* S.D. Fla. L. R. 15.1.

### V.      CONCLUSION

For the foregoing reasons, it is **ORDERED AND ADJUDGED** as follows:

1. Plaintiff's Amended Complaint [ECF No. 24] is **DISMISSED WITHOUT PREJUDICE**.

2. Plaintiff's Motion to Amend and/or Supplement is **DENIED AS MOOT**.

3. On or before **June 12, 2025**, Plaintiff shall file a second amended complaint, labeled **"Second Amended Complaint,"** that cures the deficiencies identified above. The Second Amended Complaint shall:

   a. Contain a short and plain statement of Plaintiff's claims against each named Defendant, a basis for federal jurisdiction, and a demand for judgment.

   b. Be either typed in 12-point font or larger and double-spaced or handwritten legibly.

   c. Be written on the § 1983 complaint form attached to this order.

4. The Second Amended Complaint must show **Case No. 20-cv-82084-GAYLES** so that it will be filed in this case.

5. The Clerk of Court is **DIRECTED** to mail Plaintiff the prisoner civil rights complaint form together with this Order.

**DONE AND ORDERED** in chambers at Miami, Florida, this 12th day of May, 2025.

_____
DARRIN P. GAYLES
UNITED STATES DISTRICT JUDGE

cc:    **Mustafa Gencoglanoglu**, *pro se*
       0501040
       South Florida Reception Center
       Inmate Mail/Parcels
       14000 NW 41st Street
       Doral, FL 33178